No. 23-12567-E

In The

# United States Court of Appeals

For The Eleventh Circuit

Certain Underwriters at Lloyd's of London,

*Plaintiff-Appellant,*

v.

Empress Marine Ventures, Ltd.,

*Defendant-Appellee.*

On Appeal From The United States District Court
For The Southern District of Florida
Hon. Anuraag "Raag" Hari Singhal
L.T. Case No. 0:20-CV-62643-AHS

## APPELLANT'S OPENING BRIEF

Marlin K. Green
Cody L. Frank
**BROWN SIMS, P.C.**
2801 SW 149th Ave., Suite 120
Miramar, Florida 33027
Tel.: (305) 274-5507
Fax: (305) 274-5517
mgreen@brownsims.com
cfrank@brownsims.com

*Counsel for Appellant*
*Certain Underwriters*

**No. 23-12567-E**
***Certain Underwriters v. Empress Marine***

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 11th Circuit Rules 26.1-1 through 26.1-3, Appellant Certain Underwriters at Lloyd's of London submits the below list comprising all known trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations, including subsidiaries, conglomerates, affiliates, parent corporations, or any publicly held corporation that owns 10% or more of the party's stock, that have an interest in the outcome of this proceeding:

1. Brit Limited

2. Brit Syndicates Ltd. — Managing Agent for Syndicate 2987

3. Brit UW Limited

4. Brown Sims, P.C. — Counsel for Plaintiff-Appellant

5. Certain Underwriters at Lloyd's of London Subscribing to Policy No. B0901LH1620115000, partially comprised of Syndicate 2987, an Unincorporated Association — Plaintiff-Appellant

6. Davant Law, P.A. — Former Counsel for Plaintiff

7. Davant, Charles S. — Former Counsel for Plaintiff

8. Dmiszewicki, Aaron M. — Former Counsel for Plaintiff

9. Empress Marine Ventures, Ltd. — Defendant-Appellee

10.     Fairfax Financial Holdings Ltd., Stock Ticker "TSE: FFH"

11.     Frank, Cody L. — Counsel for Plaintiff-Appellant

12.     Green, Marlin K. — Counsel for Plaintiff-Appellant

13.     Haisfield, Melaina D. — Former Counsel for Plaintiff

14.     Moore & Company, P.A. — Counsel for Defendant-Appellee

15.     Moore, Michael T. — Counsel for Defendant-Appellee

16.     Naughton, Clay M. — Counsel for Defendant-Appellee

17.     Rios, Eduardo M. — Counsel for Defendant-Appellee

18.     Singhal, Anuraag H. — U.S. District Court Judge

19.     Steven H. Hibbs, P.A.

20.     Valle, Alicia O. — U.S. Magistrate Judge

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-1 through 26.1-3, Appellant Certain Underwriters at Lloyd's of London makes the following statements as to its corporate ownership:

Underwriters is at least partially comprised of Syndicate 2987, an unincorporated association, whose managing agent is Brit

Syndicates Limited, and whose corporate member is Brit UW Limited.

Both Brit Syndicates Limited and Brit UW Limited are indirect

wholly-owned subsidiaries of Brit Limited.   100% of Brit Limited is

held, indirectly, by Fairfax Financial Holdings Limited, which is listed

on the Toronto Stock Exchange under ticker "TSE: FFH" symbol.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Underwriters respectfully state that oral argument is warranted.  This case presents complex issues of marine insurance policy interpretation, combined with breaches of express warranty issues, and calculation of damages claims.  Therefore, Underwriters submit that oral argument would materially aid the decisional process.

## **<u>TABLE OF CONTENTS</u>**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT ........................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT................................ i

TABLE OF CONTENTS ................................................................. ii

TABLE OF CITATIONS.................................................................. iv

JURISDICTIONAL STATEMENT ..................................................... x

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE ........................................................... 3

   I.   The Facts ......................................................................... 3

      A.   EMV's Insurance Policy....................................................... 3

      B.   EMV's Vessel voyaged beyond the Navigating limits and then suffered the claimed damages. .......................................... 7

      C.   EMV's inclusion of over $1.4 million in non-incident-related costs. ..................................................................... 11

      D.   Underwriters advance over $3.2 million for repair costs while reserving "all rights" under partial releases.................... 13

  II.  Course of Proceedings ......................................................... 15

      A.   When a dispute arose over indemnity amount for the reasonable repair costs, Underwriters filed suit. .................... 15

      B.   The district court granted EMV's summary judgment motion and denied Underwriters' summary judgment motion.  16

      C.   The district court awarded EMV money damages in excess of the Policy limits................................................... 19

SUMMARY OF THE ARGUMENT ................................................. 20

STANDARD OF REVIEW............................................................. 22

ARGUMENT ................................................................ 24

I.  The Eleventh Circuit Has Fashioned An Entrenched Rule Of Admiralty Law Requiring Strict Compliance With And Enforcement Of Navigational Limits Warranties In Maritime Contracts.................................................................. 24

   A.  Former Fifth Circuit Precedent........................................ 26

   B.  New Eleventh Circuit Precedent ...................................... 29

II. EMV's Breach Of The Navigating Limits Warranty Is Dispositive And No Conflicting Record Evidence Exists.............. 36

   A.  The District Court Rewrote the Navigating Limits............. 37

   B.  The Doctrine of Waiver is Inapplicable ............................ 41

   C.  The Doctrine of Equitable Estoppel is also Inapplicable.... 44

   D.  At a Minimum, a Genuine Dispute of Material Facts Exist Precluding Summary Judgment.............................................. 46

III.  New York Law Interprets Insurance Contracts According To Their Plain And Ordinary Meaning.............................................. 46

IV.  EMV's "Actual Costs" Damages Award Includes Non-Incident-Related Expenses. .................................................... 52

CONCLUSION .............................................................. 60

CERTIFICATE OF COMPLIANCE .................................................. 62

CERTIFICATE OF SERVICE......................................................... 63

iii

# TABLE OF CITATIONS

**Cases**

*Acorn Hous. Assocs. v. Sirius Am. Ins. Co.*,
  988 N.Y.S.2d 521 (Sup. Ct., Kings 2014) ................. 54, 55, 57, 58

*Adolph Coors Co. v. Movement Against Racism & The Klan*,
  777 F.2d 1538 (11th Cir. 1985) .................................................. 55

*Aetna Ins. Co. v. Hous. Oil & Transp. Co.*,
  49 F.2d 121 (5th Cir. 1931) ................................................. 27, 39

*AIG Centennial Ins. Co. v. O'Neill*,
  782 F.3d 1296 (11th Cir. 2015) .................................................. 25

*Am. Home Assurance Co. v. Merck & Co., Inc.*,
  386 F. Supp. 2d 501 (S.D.N.Y. 2005) ......................................... 50

*Am. Nat'l Fire Ins. Co. v. Kenealy*,
  72 F.3d 264 (2d Cir. 1995) ........................................................ 39

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................... 23

*Aventine Inv. Mgmt. v. Canadian Imperial Bank of Com.*,
  697 N.Y.S.2d 128 (2d Dept. 1999) ............................................. 51

*Azzia v. Royal Caribbean Cruises, Ltd.*,
  785 F. App'x 727 (11th Cir. 2019) ................................................ x

*Bannum, Inc. v. City of Fort Lauderdale*,
  901 F.2d 989 (11th Cir. 1990) ................................................... 44

*Becker v. Faber*,
  280 N.Y. 146 (N.Y. 1939) .......................................................... 40

*Beluga Holding, Ltd. v. Commerce Capital Corp.*,
  212 F.3d 1199 (11th Cir. 2000) ................................................... x

*Bier Pension Plan Trust v. Estate of Schneierson*,
  74 N.Y.2d 312 (N.Y. 1989) ........................................................ 40

iv

*Bonner v. Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ................................................. 26

*Bunge Corp. v. Freeport Marine Repair, Inc.*,
  240 F.3d 919 (11th Cir. 2001) ................................................. 24

*Clear Spring Prop. & Cas. Co. v. Big Toys LLC*,
  2023 U.S. Dist. LEXIS 124902 (S.D. Fla. July 19, 2023) ............ 44

*Cogswell v. Chubb*,
  1 A.D. 93, 36 N.Y.S. 1076 (1st Dept. 1896) ................................ 26

*Coleman Furniture Corp. v. Home Ins. Co.*,
  67 F.2d 347 (4th Cir. 1933) ...................................................... 28

*Combs v. Plantation Patterns*,
  106 F.3d 1519 (11th Cir. 1997) ................................................. 23

*Commercial Union Ins. Co. v. Flagship Marine Servs.*,
  190 F.3d 26 (2d Cir. 1999) ....................................................... 26

*Cortes v. Am. Airlines, Inc.*,
  177 F.3d 1272 (11th Cir. 1999),
  *cert. denied*, 528 U.S. 1136 (2000) ........................................... 23

*Dalton v. Educ. Testing Serv.*,
  663 N.E.2d 289 (N.Y. 1995) ...................................................... 51

*Dalton v. Harleysville Worcester Mut. Ins. Co.*,
  557 F.3d 88 (2d Cir. 2009) ................................................. 37, 46

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d Cir. 2010) ................................................ 37, 46

*Family Fashions, Inc. v. Sterling Jewelers, Inc.*,
  2022 U.S. Dist. LEXIS 162453 (S.D.N.Y. Sep. 8, 2022) ........ 40, 55

*FranPearl Equities Corp. v. 124 W. 23rd St.*,
  164 A.D.3d 1190 (1st Dept. 2018) ............................................. 58

*G.I.C. Corp. v. United States*,
  121 F.3d 1447 (11th Cir. 1997) ................................................. 60

*Galindo v. ARI Mut. Ins. Co.*,
    203 F.3d 771 (11th Cir. 2000) .................................................. 22

*Geico Marine Ins. Co. v. Shackleford*,
    945 F.3d 1135, 2019 A.M.C. 3023 (11th Cir. 2019) ............ passim

*Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*,
    409 F.2d 974 (5th Cir. 1969) .................................................... 42

*Hilton Oil Transp. v. Jonas*,
    75 F.3d 627 (11th Cir. 1996) ................................... 22, 30, 31, 46

*Himmelberger v. 40-50 Brighton First Road Apts. Corp.*,
    943 N.Y.S.2d 118 (N.Y. App. Div. 2012) .............................. 37, 47

*Holland Loader Co. LLC v. FLSmidth A/S*,
    769 F. App'x 40 (2d Cir. 2019) .............................................. 53, 54

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982).................................................................. 24

*Jeffcott v. Aetna Ins. Co.*,
    129 F.2d 582 (2d Cir. 1942).................................................... 48

*John v. Cent. Loan Admin. & Reporting*,
    2021 U.S. Dist. LEXIS 72411 (E.D.N.Y. 2021)........................... 40

*Kallberg Indus. v. Auto. Experts, Inc.*,
    861 F. App'x 321 (11th Cir. 2021)....................................... 43, 60

*Kelly v. Bensen*,
    151 A.D.3d 1312 (3d Dept. 2017) ............................................. 53

*Kenford Co. v. Erie Cty.*,
    67 N.Y.2d 257 (1986)................................................................. 54

*Kentucky Vermillion v. Norwich Union Fire Ins. Soc.*,
    146 F. 695 (9th Cir. 1906) ........................................................ 29

*Kosakow v. New Rochelle Radiology Assocs.*,
    274 F.3d 706 (2d Cir. 2001).................................................... 45

*KT Grp. Ltd. v. NCR Corp.*,
  412 F. Supp. 3d 305 (S.D.N.Y. 2019) .......................................... 55

*LaFarge Corp. v. Travelers Indem. Co.*,
  118 F.3d 1511 (11th Cir. 1997) ................................................. 23

*Lenfest v. Coldwell*,
  525 F.2d 717 (2d Cir. 1975)...................................................... 48

*Lexington Ins. Co. v. Cooke's Seafood*,
  835 F.2d 1364 (11th Cir. 1988) ..................................... 26, 30, 35

*N. Assurance Co. v. Grand View Bldg. Asso.*,
  183 U.S. 308 (1902).................................................................. 38

*N.H. Ins. Co. v. Dagnone*,
  394 F. Supp. 2d 480 (D.R.I. 2005) ............................................ 26

*N.Y. Univ. v. Cont'l Ins. Co.*,
  662 N.E.2d 763 (N.Y. 1995) ..................................................... 51

*Natixis Real Estate v. Natixis Real Estate Holdings*,
  50 N.Y.S.3d 13 (N.Y. App. Div. 2017) .................................. 37, 47

*Neil Bros. Grain Co. v. Hartford Fire Ins. Co.*,
  1 F.2d 904 (9th Cir. 1924) ........................................................ 29

*Pagane Mar., Ltd. v. Glingrow Holding, Ltd.*,
  2008 U.S. Dist. LEXIS 7016 (S.D.N.Y. Jan. 30, 2008) ............... 45

*Peak v. Northway Travel Trailers, Inc.*,
  27 A.D.3d 927 (3d Dept. 2006) ................................................. 60

*Petit v. German Ins. Co.*,
  98 F. 800 (Cir. Ct., D. W. Vir. 1898)......................................... 29

*Process Am., Inc. v. Cynergy Holdings, LLC*,
  839 F.3d 125 (2d Cir. 2016)........................................... 53, 54, 55

*Reliance Ins. Co. v. Escapade*,
  280 F.2d 482 (5th Cir. 1960) .................................................... 50

*Rizzo v. Merchs. Mut. Ins.*,
    727 N.Y.S.2d 250 (2d Dept. 2001) ...................................... 47, 49

*Robinson v. Home Ins. Co.*,
    73 F.2d 3 (5th Cir. 1934) ................................................... passim

*Rosewood Home Builders, LLC v. Nat'l Fire & Marine Ins.*,
    2013 U.S. Dist. LEXIS 45374 (N.D.N.Y. Mar. 29, 2013) ............ 46

*Satz v. Mass. Bonding & Ins. Co.*,
    243 N.Y. 385 (1926) ........................................................... 40

*Schonfeld v. Hilliard*,
    218 F.3d 164 (2d Cir. 2000) ............................................... 54

*Smith v. Fla. Dep't of Corr.*,
    713 F.3d 1059 (11th Cir. 2013) .......................................... 22

*St. Charles Foods, Inc. v. America's Favorite Chicken Co.*,
    198 F.3d 815 (11th Cir. 1999) ............................................ 23

*Steelmet, Inc. v. Caribe Towing Corp.*,
    779 F.2d 1485 (11th Cir. 1986) .......................................... 25

*Stony Brook Marine Transp. v. Wilton*,
    1997 U.S. Dist. LEXIS 23146 (E.D.N.Y. Apr. 21, 1997) ............. 26

*The Home Ins. Co. v. Vernon Holdings*,
    1995 A.M.C. 369 (S.D. Fla. 1994) ....................................... 30

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,
    487 F.3d 89 (2d Cir. 2007) ................................................. 54

*U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*,
    696 F. Supp. 2d 428 (S.D.N.Y. 2010) ................................... 49

*United Firemen's Ins. Co. v. Thomas*,
    82 F. 406 (7th Cir. 1897) ................................................... 29, 39

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank*,
    707 F.2d 680 (2d Cir. 1983) ............................................... 41

*Wechsler v. Hunt Health Sys, Ltd.,*
   330 F. Supp. 2d 383 (S.D.N.Y. 2004) ................................... 49, 50

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.,*
   348 U.S. 310 (1955)............................................................ 24, 25

*Yu v. Albany Ins. Co.,*
   281 F.3d 803 (9th Cir. 2002) .................................................... 43

**Statutes**

28 U.S.C. § 1291 .............................................................................. x

28 U.S.C. § 1292(a)(3) ...................................................................... x

28 U.S.C. § 1333 ......................................................................... x, 25

N.Y. Ins. Law § 3106(c) ................................................................. 26

**Other Authorities**

1 New Appleman New York Insurance Law § 14.05(6) (2023) ........ 38

Buglass, Leslie J., *Marine Insurance and General Average in The
   United States* (3d ed. 1991) ...................................................... 51

**Regulations**

N.Y. Comp. Codes R. & Regs. § 216.7(a)(1) ................................... 48

## JURISDICTIONAL STATEMENT

### I.    Subject Matter Jurisdiction[1]

The district court had jurisdiction under 28 U.S.C. § 1333 because this is an admiralty claim.

### II.    Appellate Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1292(a)(3) because this is an appeal from interlocutory decrees that conclusively determine the rights and liabilities of the parties. *See Beluga Holding, Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199, 1203–04 (11th Cir. 2000); *Azzia v. Royal Caribbean*, 785 F. App'x 727, 728 (11th Cir. 2019).

Alternatively, this Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision that disposed of all the parties' claims.

---

[1] References to the Record are to the document number ("D.E. __") and page ("at __") that appear in the header generated by the electronic filing system.  For full transcripts, references appear as ("D.E. __ at __:__") where the colon separates page and line numbers. For condensed transcripts, references appear as ("D.E. __ at __, __:__") where the colon separates the mini-deposition page and line numbers.

## III.   Timeliness

On January 11, 2023, the district court entered summary judgment in defendant/appellee Empress Marine Ventures, Ltd.'s ("EMV") favor.[2]   On February 15, 2023, the district court entered Final Judgment.[3]   On March 15, 2023, Underwriters filed a Motion for Reconsideration, to Alter or Amend Final Judgment, or for Relief from Final Judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60.[4]   On July 5, 2023, the district court denied Underwriters' request for reconsideration.[5]   Underwriters filed its Notice of Appeal on August 4, 2023.[6]

---

[2] D.E. 124.
[3] D.E. 131.
[4] D.E. 137.
[5] D.E. 144.
[6] D.E. 148.

## STATEMENT OF THE ISSUES

I.   Under Eleventh Circuit precedent, federal admiralty law requires strict compliance with and enforcement of navigational limits warranties in maritime contracts.  The district court, however, failed to strictly enforce the navigational limits warranty in the applicable marine insurance policy.  Did the district court err by granting coverage despite EMV's breach of the navigational limits warranty?

II.   EMV argued that Underwriters could not enforce the navigational limits warranty to deny coverage because Underwriters' broker emailed EMV's insurance agent the day of the loss stating that an endorsement to include Caribbean navigation would be provided the day after the claimed loss.  Based on this email, the district court concluded that Underwriters had expanded the navigational limits to include the Caribbean.  Was the district court wrong in determining there was no genuine dispute regarding a purported amendment to the navigational limits warranty?

III.   Underwriters contended that they are only responsible for reasonable repair costs, not the entire repair bill, which included amounts deemed unreasonable, unrelated, and unnecessary by

1

Underwriters.  Did the district court misinterpret the "New for Old" clause in EMV's marine insurance policy?

IV.    Without a trial, evidentiary hearing, or the taking of evidence, the district court entered a damages award in favor of EMV even though EMV admittedly included approximately $1.4 million in non-incident-related costs in its "actual costs" damages claim.  The question is whether the district court's award of $9,764,746.01 in damages to EMV was in error?

## STATEMENT OF THE CASE

**I. THE FACTS**

### A. EMV's Insurance Policy

Underwriters insured EMV's yacht, M/Y *Never Say Never*, a 2011 130-foot Sunseeker Predator registered in the Cayman Islands ("Vessel"), under a Hull and Machinery policy (No. B0901LH1620115000) ("Policy"), effective from July 31, 2016 through July 31, 2017.[7]  The Policy provides a hull limit of $9.5 million, subject to a $33,250 deductible.[8]

The Policy provides all-risk coverage for physical loss or damage to the Vessel from any external cause subject to the Policy's exclusions, conditions, and limitations.[9]

Coverage for "hot work" on the Vessel was conditioned on disclosure of the full extent of work to be done on the Vessel:

> When the Yacht enters a Shipyard for any hot work, or if a Shipyard requests a waiver of subrogation from the Assured, Owner or Owner's Legal Representative during the policy period, a full schedule of hot work to be undertaken during the Shipyard period must be seen and agreed by Underwriters. The Shipyard's hot work procedures must be

---

[7] D.E. 10-1 at 2.
[8] D.E. 10-1 at 2–3.
[9] D.E. 10-1 at 26.

3

provided to Underwriters. Underwriters also require a copy of the Ship Repairers Liability Insurance documentation. All the aforementioned to be complied with prior to hot work commencing. Underwriters reserve the right to amend the terms and conditions hereunder and to charge additional premium if required.[10]

The Policy contains an express warranty providing that EMV "[w]arranted all laws/regulations applicable to the operation of the vessel are observed and complied with."[11]

The Policy did not provide coverage if the Vessel was navigated in the Caribbean and the Policy required that the Vessel be shipped as cargo between approved navigational limits:

**Navigating**: Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including the Bahamas and the Turks and Caicos Islands. Plus waters of the Mediterranean Sea, including adjacent seas, excluding Israel, Lebanon, Libya and Syria.

*Vessel to be shipped as cargo between limits*; Hull and Machinery coverage hereon is suspended in its entirety from time of commencement of loading operation on to cargo vessel and whilst being shipped; coverage hereon re-attaching after completion of safe unloading operation overside of cargo vessel.

---

[10] D.E. 10-1 at 5–6.
[11] D.E. 10-1 at 7.

> Protection & Indemnity, Medical Payments and
> Personal Accident coverage in respect of Owners
> paid crew remains in force throughout.
>
> Twelve months in-commission use.[12]

EMV agreed to moor the Vessel in Florida between October and

December:

> Information made available to and seen by all
> subscribing Insurers hereon and initialed by
> contract leader includes the following: . . .
>
> **Mooring**:  August – October: New England /
> October – December: Florida /
> January – April: Bahamas /
> May – August: Mediterranean.[13]

EMV agreed to the following "General Conditions and Claims

Procedure":

> Any fraud, mis-statement or concealment by an
> insured person if unknown to the Assured in
> relation to any matter affecting this insurance
> or in connection with making of any claim
> hereunder shall render this insurance null and
> void in so far as it relates to the insured person
> in question, but any such fraud, mis-statement
> or concealment by or known to the Assured
> shall render this whole insurance null and void
> and all claims hereunder shall be forfeited.
>
> If the insured person shall engage in any
> occupation in which ***greater risk may be***

---

[12] D.E. 10-1 at 3; D.E. 122 at 2, 5–6 (emphasis added).
[13] D.E. 10-1 at 9.

> ***incurred*** than in the occupation disclosed, ***without first*** notifying the Underwriters <u>and</u> ***obtaining their written agreement to the amendment of the insurance*** (*subject to the payment of such reasonable additional premium as the Underwriters may require as the consideration for such agreement*) then ***no claim shall be payable*** in respect of any accident arising out of or in the course of such occupation.
>
> . . . The geographical limits applicable to this policy are set forth in the policy terms and conditions.[14]

Regarding liability for replacement/repair costs, the Policy provides:

> **NEW FOR OLD**
> In the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, the Assurers shall be liable for no more than the cost of repair or a reasonable value.[15]

The Policy's choice-of-law clause specifies the application of New York law.[16]

---

[14] D.E. 10-1 at 16 (emphasis added).
[15] D.E. 10-1 at 27; D.E. 137-2 at 40:9–21.
[16] D.E. 10-1 at 7.

## B. EMV's Vessel voyaged beyond the Navigating limits and then suffered the claimed damages.

As early as November 2016, EMV planned to sail the Vessel from Fort Lauderdale, Florida to the Dominican Republic ("D.R.") with a December 26, 2016 departure date.[17]

On December 23, 2016 at 12:06 p.m., EMV's captain, Robin Todd, emailed its insurance agent, Javier Mora, advising of crew changes and the upcoming D.R. voyage:

> Hi Javier, as I mentioned before we have had a few crew changes. Sorry for the **short notice** but it has been a chaotic shipyard period just before Christmas and we have only just finalized the crew. The plan is to leave on Monday 26th for the Dominican Republic. . . .[18]

EMV's agent, in turn, forwarded the above email four days later to Underwriters' insurance broker, JLT Specialty Ltd.:

> **From:** Javier Mora [mailto: JMora@southeastinsure.com]
> **Sent:** 27 December 2016 15:07
> **To:** Bambridge, Philippa – GBR267912
> **Cc:** Bryant, Emily – GBR284429
> **Subject:** Fwd: Never Say Never
>
> Hello,
>
> Happy Holidays :)

---

[17] D.E. 82-1 at 4, 11:11–12:3; D.E. 137-1 at 2–5; D.E. 122 at 4.
[18] D.E. 137-1 at 2–3; D.E. 137-2 at 17:3–10; D.E. 137-2 at 72:24–73:1; D.E. 10-1 at 21. (Emphasis added).

Please note the change in crew for Never Say Never.

**I have confirmed no losses for the chan[g]es**.[19]

On December 28, 2016, Underwriters' broker, in turn, confirmed receipt of the December 27 email and advised EMV's agent that an endorsement permitting D.R. navigating was required:

> . . . Can advise that Underwriters have noted and accepted resume of proposed new Captain Dusty L. Sackmann as submitted, _subject to_ receiving satisfactory confirmation of his marine claims/incidents record which please advise and _subject to_ flag state compliance.
>
> We will now need to endorse the policy to include **Caribbean navigating** as this **is not currently included within the policy**. An endorsement to this effect will follow tomorrow.[20]

On December 29, 2016 at 8:27 a.m., Captain Todd notified EMV's agent of the Vessel's grounding in the D.R.:

> Dear Javier, I am sorry to inform you that Never Say Never struck a rock _yesterday evening_ whilst entering the port of Ocean World in the Dominican Republic. Please inform the underwriters ASAP.

---

[19] D.E. 137-1 at 2 (emphasis added).
[20] D.E. 137-1 at 2 (emphasis added), 4 (noting date of email).

The boat is now safely secured in port and running on shore power but the damage appears to be quite serious. *Divers were attempting to assess the damage yesterday evening and will continue this morning in daylight*. Attached is a preliminary report from the relief captain, Dusty Sackmann, who was in charge of the vessel at the time.

. . . There appears to be no facility in the Dominican Republic where repairs can be effected. . . .[21]

Based upon the above-cited email, it is clear that the grounding incident occurred on December 28, 2016.[22]  Further, it is clear that at that point in time, Underwriters had not issued an endorsement, and EMV paid no additional premium, for Caribbean navigation.[23]  In fact, Underwriters never issued such an endorsement nor has EMV paid such a premium.[24]   In short, when the grounding incident occurred, the Vessel was not covered under the Policy.[25]

In turn, EMV's agent reported the incident to Underwriters' broker on December 29:

---

[21] D.E. 137-1 at 4–5 (emphasis added). EMV omitted this email in its summary judgment evidence. D.E. 106-2 at 3.

[22] D.E. 137-1 at 4–5.

[23] D.E. 137-1 at 4.

[24] The process to obtain certain approval from Underwriters "is not an instantaneous process." D.E. 78-14 at 1, 7:7–14.

[25] D.E. 10-1 at 3; D.E. 122 at 2, 5–6.

**From:** Javier Mora [mailto: JMora@southeastinsure.com]
**Sent:** 29 December 2016 13:36
**To:** Bryant, Emily – GBR284429
**Subject:** Fwd: Never Say Never-Grounding 28th Dec[.]

Hello Emily,

Sadly I have to report a claim. The remarks of the captain of Never Say Never are noted above.

Please let me know what you need from end to collect it as soon as possible.[26]

In response, on December 29, 2016 at 8:47:49 a.m., Underwriters' broker sent an internal email to Mr. Robert Williams of JLT Specialty Ltd. memorializing the timeline of events:

Hi Rob,
Please see details below of a new claim.

As discussed, the new Captain Dusty Sackmann was agreed by Underwriters yesterday and Underwriters have just agreed to include waters of the Caribbean within the navigating limits.

I have attached the chain of emails from the Assured to the Producer.  The Assured emailed the Producer on 23rd December with details of Captain Dusty Sackmann and advised that they were leaving on 26th December. The Producer sent this on to us on 27th December and we

---

[26] D.E. 137-1 at 4.

10

picked up on 28th December due to 27th being a bank holiday.[27]

The Vessel sat moored in the D.R. until January 22, 2017, when it sailed under tow back to Fort Lauderdale, arriving on January 28, 2017.[28]

## C. EMV's inclusion of over $1.4 million in non-incident-related costs.

The grounding incident caused damage to the Vessel's structure, hull, fuel and water tanks, starboard stabilizer, and propulsive stern gear.[29]   While moored at Ocean World Marina in Puerto Plata, the Vessel sustained additional damage due to heavy weather.[30]   During the tow back to Fort Lauderdale, the Vessel sustained additional damage due to heavy pitching waves.[31]   EMV submitted three insurance claims (collectively the "Incident").[32]

Following the Incident, Underwriters investigated the loss to determine the extent of coverage and the reasonable cost of repairs.[33]

---

[27] D.E. 137-1 at 4.  Mr. Williams served as "direct line of contact" and "Kevin Allmond at Brit" as "the actual underwriter[.]" D.E. 81-1 at 33:2–6.
[28] D.E. 14 at 11, ¶¶ 16, 18.
[29] D.E. 10 at 21; D.E. 137-2 at 32:15–34:8.
[30] D.E. 44-1 at 5–9; D.E. 30-2.
[31] D.E. 10 at 25.
[32] D.E. 10 at 52.
[33] D.E. 10 at 26; D.E. 81-1 at 215.

11

The Vessel's repairs started in January 2017 and finished around November 2020.[34]  Over that period, the Vessel's alleged repair costs grew from: an initial "very rough" valuation of $600,000.00 as of January 23, 2017;[35] to $4,495,000 as of November 19, 2017;[36] to $6,423,535.40 as of March 2018;[37] to $9.3 million as of April 2019;[38] to $9,802,931 as of November 1, 2020[39].

EMV's corporate representative, Rodrigo Chapur Duarte, testified in deposition that its $9,764,746.01 damages claim included non-incident-related expenses totaling between $1.4 million and $1,738,307.[40]  Those non-incident-related expenses included: about $187,000 for management of another boat;[41] $47,000 for annual recertification of fire equipment;[42] $3,200 for EMV's corporation

---

[34] D.E. 14 at 20, 24.
[35] D.E. 81-1 at 29:12–34:7.
[36] D.E. 81-1 at 94:9–95:19.
[37] D.E. 81-1 at 107:13–109:3; D.E. 81-1 at 112:7–16.
[38] D.E. 81-1 at 140:20–141:1.
[39] D.E. 85-1 at 45:15–46:10.
[40] D.E. 137-2 at 64:11–65:25, 66:24–85:7; D.E. 103-1 at 19–26; D.E. 80-1 at 163-67 (non-incident-related cost summary spreadsheet).
[41] D.E. 137-2 at 71:23–72:23.
[42] D.E. 137-2 at 73:25–74:7, 76:15–25.

costs;[43] about $400,062.07 for insurance costs;[44] unspecified amount for attorney fees and costs,[45] among other purported repair costs.[46] Mr. Chapur testified that EMV "expected the insurance company to reimburse you [EMV] for fair, reasonable, and loss related expenses that you [EMV] incurred."[47]

EMV purchased the Vessel for about €8 million (euros) in the summer of 2015.[48] EMV sold the Vessel for $5.7 million around February 25, 2021.[49]

### D. Underwriters advance over $3.2 million for repair costs while reserving "all rights" under partial releases.

EMV did not promptly establish an appropriate and reasonable repair schedule for addressing the damages resulting from the Incident.[50] Over a three-year period, Underwriters and EMV entered into thirteen partial settlement agreements totaling $3,259,432.20.[51]

---

[43] D.E. 137-2 at 75:1–12, 76:15–77:2.

[44] D.E. 137-2 at 72:24–73:24; D.E. 88-1 at 77 (section 6.1.14); D.E. 103-1 at 19, 21–26.

[45] D.E. 137-2 at 72:19–23.

[46] D.E. 80-1 at 163-67.

[47] D.E. 137-2 at 53:21–54:1.

[48] D.E. 137-2 at 14:1–16:3.

[49] D.E. 137-2 at 22:11–23:2.

[50] D.E. 10-2 at 6–7; D.E. 44-1 at 79 (section 4.10.1).

[51] D.E. 74-7 at 2–14.

Those agreements served as advances of indemnity payments while Underwriters evaluated the increasing repair costs.[52]

Each agreement describes the payment thereunder as an "advance payment for a portion of the cost to repair the Vessel," for which EMV "discharge[s] . . . those Underwriters subscribing to Policy No. LH1620115, as their interests may appear . . . from any and all actions, causes of action, claims and demands for costs to repair the Vessel which have already been incurred and paid out of" the partial settlement.[53]

Those agreements provide:

> It is understood that this is a partial release of claims with the actual amount of damage to be finally determined in the future. The payment made and received hereunder, which is the subject of this Partial Release, is in effect an advance payment with both parties reserving all rights as to the ultimate determination of the quantum of the amount of damage sustained.
>
> IT BEING FURTHER AGREED AND UNDERSTOOD that the payment of said amount is not to be construed as an admission of liability, but is a partial payment and corresponding partial release of a disputed claim.[54]

---

[52] D.E. 74-7 at 2–14.
[53] D.E. 74-7 at 2–14.
[54] D.E. 74-7 at 2–14.

14

## II.  COURSE OF PROCEEDINGS

### A. When a dispute arose over indemnity amount for the reasonable repair costs, Underwriters filed suit.

Underwriters initiated this lawsuit on December 22, 2020, seeking to disclaim or limit coverage for damages to the Vessel.[55] Underwriters raised claims sounding in breach of express warranty under New York law and declaratory relief regarding the Incident.[56]

EMV answered, admitting that it "demands the full [$9,500,000] hull value of the Vessel under the Policy,"[57] and asserted affirmative defenses sounding in waiver, estoppel, failure to state a claim, and lack of causation.[58]  EMV also counterclaimed, asserting a breach of the covenant of good faith and fair dealing under New York law founded on a purported negligent claims handling and bad-faith dealings by Underwriters.[59]

Underwriters answered EMV's counterclaim, asserting affirmative defenses sounding in failure to mitigate, limitation of

---

[55] D.E. 1; D.E. 10.
[56] D.E. 1; D.E. 10.
[57] D.E. 14 at 6, ¶ 78.
[58] D.E. 14.
[59] D.E. 14 at 8; D.E. 46 (dismissing EMV's declaratory relief claim).

recovery per applicable contractual terms, illusory or unrelated damages, and unclean hands.[60]

### B. The district court granted EMV's summary judgment motion and denied Underwriters' summary judgment motion.

The parties filed cross-motions for summary judgment.[61]  The principal dispute between the parties on the cross-summary judgment motions was whether EMV breached express warranties under its Policy and whether EMV's damages must be limited to the fair and reasonable value of repair costs.[62]

The parties filed pretrial stipulations before the district court ruled on the parties' cross-summary judgment motions.[63] Underwriters noticed for trial issues of fact and law concerning EMV's breaches of express warranties relating to navigational limits, legal/regulatory compliance while navigating, and damages.[64] Underwriters served EMV a proposed pretrial stipulation three months before the trial period.[65]

---

[60] D.E. 50.
[61] D.E. 75; D.E. 76; D.E. 137-3 at 2, 40, 184.
[62] D.E. 75; D.E. 76.
[63] D.E. 122; D.E. 123.
[64] D.E. 122 at 5, 6.
[65] D.E. 122 at 1 n.1.

Two days before Calendar Call, and six days before the trial period,[66] the district court granted summary judgment in EMV's favor, finding coverage for EMV's repair costs existed under the Policy.[67]  Regarding the Navigating limits issue, the district court found that the Vessel had grounded in the D.R. on December 28, 2016.[68]  Relying on an unsworn, unauthenticated email expressly stating a decision on coverage for Caribbean navigation will be made on December 29, 2016, the district court found that Underwriters "expressly expanded the coverage to include the Caribbean."[69]

The district court's order declined to consider: (1) whether EMV breached the navigational limits warranty before the claimed damages arose; (2) whether a valid endorsement or additional premium was required to expand the Navigating limits per Policy terms;[70] (3) whether EMV willfully or intentionally breached the Navigating limits warranty per Policy terms;[71] (4) whether EMV breached the legal/regulatory compliance warranty; and (5) whether

---

[66] D.E. 119 at 1.
[67] D.E. 124.
[68] D.E. 124 at 3.
[69] D.E. 124 at 9.
[70] D.E. 10-1 at 16.
[71] D.E. 10-1 at 23 ("Personal Negligence" clause).

EMV had unclean hands by including non-incident-related costs to its alleged quantum of damages.[72]

Regarding the declaratory relief claim, the district court construed the "New for Old" clause and determined that the clause "affords cost of repair insurance coverage for the insured damaged vessel."[73]  In finding the "New for Old" clause unambiguous,[74] the district court reasoned that

> [t]he last sentence can end after the word "repair."  The "reasonable value" term, as stated above, is nowhere defined in the policy, and is the only portion of the relevant policy language that is ambiguous.  A question could arise as to whether it refers to a reasonable value of the cost of repairs or a reasonable value of the insured vessel, but to the extent it means the latter, it cannot be employed to provide less insurance coverage than cost of repair coverage.  A commonsense approach that gives value and meaning to every word the parties chose to include in the policy is that "reasonable value" would be considered only if there is no identifiable cost of repair.  Here, that is not the case.  Empress Marine's damages consist entirely of ***actual amounts it has already paid out of its own pocket to repair the Vessel***.  The reasonable value term here is akin

---

[72] D.E. 124 at 1–13.
[73] D.E. 124 at 12.
[74] D.E. 144 at 5.

to surplusage in light of actual payments made.[75]

The district court apparently applied Florida, not New York, law when construing the "New for Old" clause.[76]

## C. The district court awarded EMV money damages in excess of the Policy limits.

Final declaratory Judgment, awarding EMV $9,764,746.01 in reparations for "actual costs" incurred, ensued on February 15, 2023, despite the Policy limit of $9,500,000.[77] The district court denied Underwriters' motion for reconsideration.[78]

This appeal follows.[79]

---

[75] D.E. 124 at 12 (emphasis in original).

[76] D.E. 124 at 9; D.E. 137 at 2.

[77] D.E. 131.

[78] D.E. 144.

[79] D.E. 148.

## SUMMARY OF THE ARGUMENT

The first question at hand in this appeal is whether EMV violated the Navigating limits warranty in the Policy. The district court's decision, based on shaky analysis and without a rigorous examination, wrongly determined that Underwriters had broadened the Navigating limits to encompass Caribbean navigation prior to the grounding incident. This judgment rested on the use of extrinsic evidence in the form of an unverified internal email sent by Underwriters' broker, which EMV neither received nor relied upon. This ruling by the district court must be overturned, as it contradicts established Eleventh Circuit precedent that mandates strict interpretation and enforcement of navigational limit warranties for marine insurance coverage. At the very least, there are significant unresolved issues of fact that preclude the granting of summary judgment on this matter. These include questions such as whether Underwriters approved Caribbean navigation, whether Underwriters issued an endorsement for Caribbean navigation, whether the incident occurred before any such endorsement, and whether an additional premium was required for Caribbean navigation.

20

The second issue at hand pertains to the district court's erroneous construction and interpretation of the "New for Old" clause in the Policy. The district court's interpretation veered into the realm of unreasonableness when it selectively omitted a crucial portion of said clause to support EMV's claims, essentially rewriting the Policy in their favor. This misstep necessitates a reversal of the district court's decision since it construed the "New for Old" clause against Underwriters and essentially reconfigured the Policy to validate coverage.

The final issue at hand is whether the district court failed to base the damages award upon a proper evidentiary foundation and whether EMV is entitled to a damages award that includes expenses unrelated to the Incident. The district court did not hold a trial, an evidentiary hearing, or review any evidence prior to entering a damages award. The district court did not require EMV to prove up its alleged damages. The district court did not allow Underwriters to present any evidence to challenge EMV's purported damages. In fact, the district court merely required EMV to submit a proposed damages award which it adopted without proper evidentiary support or scrutiny. As a result, the damages award does not reflect the

21

testimony of EMV's corporate representative that roughly $1.4 million out of the total $9,764,746.01 represents costs unrelated to the Incident.  Surprisingly, the district court granted EMV the exact amount they requested, despite the absence of sworn, credible testimony or evidence on this matter.  This ruling by the district court must be overturned because it would result in EMV receiving a windfall, as there is no credible evidence to support the Final Judgment, which grants EMV more than the Policy limits and the "actual costs" of repairing the Vessel for the Incident.

## STANDARD OF REVIEW

The Court reviews *de novo* the district court's decision to grant one party's summary judgment motion and to deny the other party's summary judgment motion. *Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996) (reversing summary judgment); *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (same).  In so doing, the Court considers all facts and reasonable inferences from the record in the light most favorable to the non-moving party. *Galindo v. ARI Mut. Ins.*, 203 F.3d 771, 774 (11th Cir. 2000); *St. Charles Foods v. America's Favorite Chicken*, 198 F.3d 815, 819 (11th Cir. 1999) (summary judgment inappropriate where contractual

ambiguity existed). And, importantly, factual issues cannot be decided on summary judgment; rather, a mere determination that factual issues exist can be made. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997) (reversing summary judgment). The factual dispute must be genuine, "that is, [ ] the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). EMV bears the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Underwriters bear the burden of presenting evidence such that a reasonable jury could rule in its favor.

"Questions of contract interpretation are pure questions of law" subject to *de novo* review. *Geico Marine Ins. v. Shackleford*, 945 F.3d 1135, 1139, 2019 A.M.C. 3023 (11th Cir. 2019); *LaFarge Corp. v. Travelers Indem.*, 118 F.3d 1511, 1515 (11th Cir. 1997); *Cortes v. Am. Airlines*, 177 F.3d 1272, 1296 (11th Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000). As a dispute arising under a marine insurance contract, this case "fall[s] within the admiralty jurisdiction of the federal courts," so it is "governed by maritime law." *Shackleford*, 945 F.3d at 1139. When no "judicially established federal admiralty rule"

23

resolves the issue at hand, federal courts "rely on state law when addressing questions of maritime insurance." *Id.* (quoting *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 314 (1955)). Because no serious dispute exists that New York law is controlling under the Policy,[80] New York law must be applied where a gap in federal admiralty law resolving the issue at hand occurs. *Wilburn Boat.*

The Court reviews a damages award under the clearly erroneous standard. *Bunge Corp. v. Freeport Marine*, 240 F.3d 919, 923 (11th Cir. 2001). A district court's findings may be cast aside where there is a "definite and firm conviction that a mistake has been committed." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 (1982).

## ARGUMENT

### I. THE ELEVENTH CIRCUIT HAS FASHIONED AN ENTRENCHED RULE OF ADMIRALTY LAW REQUIRING STRICT COMPLIANCE WITH AND ENFORCEMENT OF NAVIGATIONAL LIMITS WARRANTIES IN MARITIME CONTRACTS.

Marine insurance contracts qualify as maritime contracts, which fall within the admiralty jurisdiction of the federal courts and are governed by maritime law. *AIG Centennial Ins. Co. v. O'Neill*, 782

---

[80] *See* Policy [D.E. 10-1 at 7] ("Choice of law & Jurisdiction: New York"); Def. Opp. to MTD [D.E. 16 at 3]; MTD Order [D.E. 46 at 7] ("The parties do not dispute that New York law is controlling under the Policy. Accordingly, New York law governs substantive issues").

F.3d 1296, 1302 n.6 (11th Cir. 2015) (citing U.S. CONST. ART. III, § 2, cl. 1 and 28 U.S.C. § 1333).

The *Wilburn Boat* analysis, as applied in this Circuit, requires courts to (1) identify the state law involved (here, New York); (2) determine whether there is a conflicting admiralty law rule (here, no conflict exists); (3) if no admiralty rule exists, consider whether one should be fashioned; and (4) if none is to be fashioned, apply state law. *See Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1490 (11th Cir. 1986).

Where a judicially established federal admiralty rule exists with respect to a term in a maritime contract, a court is bound to apply that rule without regard to state law. *See Wilburn Boat*, 348 U.S. at 313. *Wilburn Boat* limits strict compliance to warranties that are entrenched in admiralty law. *Id.*

Historically, this Circuit has required strict compliance with and enforcement of navigational limit warranties in maritime contracts. And that strict compliance requirement is an entrenched

admiralty rule of law in this Circuit.  Thus, Eleventh Circuit case law should be followed under this analysis.[81]

### A. Former Fifth Circuit Precedent

Since at least 1934, former Fifth Circuit case law holds that strict, absolute compliance with navigational limits warranties in marine insurance contracts is required. *See Robinson v. Home Ins. Co.*, 73 F.2d 3 (5th Cir. 1934).[82]

*Robinson* involved the question of whether the insureds breached a navigation limits warranty under their marine insurance policy. *Id.* 4.  The *Robinson* policy contained the following provision:

---

[81] New York law is in harmony. *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 31–32 (2d Cir. 1999) (finding New York law, like majority view, requires strict compliance with marine warranties, even if collateral to primary risk); *N.H. Ins. Co. v. Dagnone*, 394 F. Supp. 2d 480, 486 (D.R.I. 2005) (applying N.Y. Ins. Law § 3106(c) and finding breach of navigation warranty forecloses any coverage under yacht policy where insured was in breach of warranty at time of accident, irrespective of the relation between the breach and damage); *Stony Brook Marine v. Wilton*, 1997 U.S. Dist. LEXIS 23146, at *35 (E.D.N.Y. 1997) (warranty "must be literally complied with, and that non-compliance forbids recovery, regardless of whether the omission had casual relation to the loss"); *Cogswell v. Chubb*, 1 A.D. 93, 95, 36 N.Y.S. 1076, 1078 (1st Dept. 1896) (same).
[82] Cases decided by the Court of Appeals for the Fifth Circuit before 1981 are binding precedent in the Eleventh Circuit. *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 n.3 (11th Cir. 1988) (citing *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)).

"Warranted laid up, during the entire term of the policy, at dock, St. Marys, Georgia." *Id.* The insureds notified their insurance broker/producer of a planned relocation of the fishing boat to fresh water upstream. *Id.* Nine days later, the insureds moved the fishing boat upstream about 31.5 miles away from St. Marys dock. *Id.* One day later, a fire destroyed the fishing boat while moored at a place other than the place specified in the policy. *Id.* The insurer disclaimed coverage. The insureds sued their insurer on the marine insurance policy, alleging that "[t]he change of the location of the insured vessel did not change or increase the danger from fire." *Id.* The district court granted the insurer's general demurrer and dismissed the suit. *Id.* The insureds appealed.

The Fifth Circuit first noted that "[t]he policy sued on is one of marine insurance." *Id.* (citing *Aetna Ins. Co. v. Hous. Oil & Transp. Co.*, 49 F.2d 121 (5th Cir. 1931)). The Fifth Circuit then turned to the at-issue provision, finding it to be "clear and unambiguous" and, by its express terms, a warranty. *Id.* The court explained that

> [a] warranty as to the place where the policy stipulates the insured vessel is to be located during the period covered by the policy makes the right of the insured to recover for damages or loss ***dependent upon*** the vessel being at the

27

> stated place when the damage or loss occurred; and if damage or loss occurs when the vessel is at a place other than the one named in the policy, the insured has no right to recover on the policy, though the place is quite as safe as the one named in the policy.

*Id.* (citing *Coleman Furniture Corp. v. Home Ins. Co.*, 67 F.2d 347, 348 (4th Cir. 1933)).  The Fifth Circuit found the at-issue warranty to be "an express stipulation as to the location of the insured vessel 'during the entire term of the policy.'" *Id.*  As a result, the Fifth Circuit found that

> [t]hat provision quite plainly shows that the appellee [insurer] ***did not consent*** to be liable in the event of the loss or destruction of the named vessel occurring ***at a place other than the one specified*** in the provision.  It negatives the conclusion that appellant [insured] agreed to be liable for the destruction of the vessel while it was tied up at a point on the Florida side of the St. Marys river 31 1/2 miles up the stream from the town of St. Marys.

*Id.* (citations omitted; emphasis added).  Thus, the insured breached the navigational limits warranty, barring coverage under the marine insurance policy.

Moreover, the Fifth Circuit found no waiver of the defense by the insurer had occurred.  "A waiver of [an insurer's] right under [a] promissory warranty d[oes] not result from its mere silence or

28

inaction after the giving of the alleged notice that the boat was to be moved." *Id.* at 4–5.[83]  The Fifth Circuit reasoned that no allegation was made as to

> anything done or said [o]n behalf of the [insurer] [which] led the [insured] to believe that [insurer] consented that the insurance on the [fishing boat] remain[ed] effective after a removal of it from the place named in the . . . provision, or that after the alleged removal [insurer] in any way recognized or admitted that it continued to be liable under the policy.

*Id.*  Thus, "[i]t was not made to appear that by waiver or estoppel the [insurer] lost the right to avail itself of a defense based on the promissory warranty." *Id.*  The Fifth Circuit affirmed.

## B. New Eleventh Circuit Precedent

The Eleventh Circuit follows the majority view that strict, absolute compliance with navigation limit warranties in marine insurance contracts is required for coverage to exist. *Shackleford,*

---

[83] Citing *Neil Bros. Grain Co. v. Hartford Fire Ins. Co.*, 1 F.2d 904 (9th Cir. 1924) (riders create new and independent contracts); *Kentucky Vermillion v. Norwich Union Fire Ins. Soc.*, 146 F. 695 (9th Cir. 1906) (parol evidence inadmissible); *Petit v. German Ins. Co.*, 98 F. 800 (Cir. Ct., D. W. Vir. 1898); *United Firemen's Ins. Co. v. Thomas*, 82 F. 406 (7th Cir. 1897) (oral agreement contradicting written terms is void).

945 F.3d 1135 (11th Cir. 2019); *Jonas*, 75 F.3d 627 (11th Cir. 1996); *Cooke's Seafood*, 835 F.2d 1364 (11th Cir. 1988).[84]

*Cooke's Seafood* involved the question of whether coverage existed where an insured vessel exceeded the 100-mile navigation limit of the marine policy and sustained damages. *Id.* at 1365. The relevant provision there provided: "Navigation Warranty: confined to the inland and coastal waters of the United States from Cape Hatteras, North Carolina to Brownsville, Texas not exceeding 100 miles offshore, excluding all territorial waters of Cuba or Mexico." *Id.* This Court pointed out that "admiralty law requires the ***strict construction*** of express [and implied] warranties in marine insurance contracts; breach of the express [or implied] warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." *Id.* at 1366, 1367 n.5. "Leaving the warranted geographic limits was not . . . an 'unavoidable necessity'" under the circumstances. *Id.* at 1367. And "navigation warranties ensure that when 'little problems' arise

---

[84] *See also The Home Ins. Co. v. Vernon Holdings*, 1995 A.M.C. 369 (S.D. Fla. 1994) ("the Eleventh Circuit has established a federal admiralty rule requiring strict adherence to navigational limits warranties").

on 'little vessels,' the masters will seek refuge close to shore where the vessels will be exposed to fewer risks than they would meet on the high seas." *Id.*  Consequently, the Court held that no coverage existed because the insured breached the navigation limits warranty. *Id.* at 1366.

*Jonas* involved the question of whether an insurer can deny coverage where the insured barge traded with a Country not listed in the policy's trade limits. 75 F.3d at 628.  For context, the insured in *Jonas* "requested hull and machinery insurance on Barge [ ] through its New York insurance broker [Sexton].  In turn, Sexton contacted Citicorp Insurance Brokers (Marine) Limited (Citicorp), a London broker authorized to place insurance with Underwriters at Lloyd's. Citicorp requested in its application for a quotation for hull and machinery insurance, and the Underwriters agreed to a quotation for the following trade limits: <u>Limited to East Coast of USA, Gulf of Mexico and the West Indies or held covered</u>.'" *Id.*

"[The insured] did not advise Sexton, Citicorp or the insurers of the barge[,] of the voyages to Puerto Cortes, Honduras, nor did it request that barge [] be 'held covered' for the voyages **or** agree to pay

31

an additional premium." *Id.* (emphasis added). The district court granted summary judgment in favor of the insured.

On appeal, this Court reversed. The Court concluded that genuine issues of material facts concerning the alleged breach of the trading limits warranty remained unresolved, precluding summary judgment. In so doing, the Court restated the general principle that "[a] breach of warranty discharges the insurer from liability and deprives the assured from recourse against the insurer, whether the loss can be traced to the breach or not and even though such breach was innocently or inadvertently committed by the assured." Indeed, "**[t]he admiralty cases that support this principle are legion and form a judicially established and entrenched federal admiralty rule**." *Id.* at 630 (emphasis added). "Because the consequences of a breach of warranty are so serious, it was reasonable for Underwriters to find some appropriate means of protecting" itself from an insured's intentional act of making the "risk different in character from that contemplated at the time the policy contract was effected." Thus, because issues involving the intentionality of the insured's acts still remained, the Court reversed summary judgment and remanded for a trial.

*Shackleford* involved the question of whether the insured's violation of express cruising limits barred coverage. 945 F.3d at 1137. The insured in *Shackleford* had to obtain liability insurance for its vessel to be hauled ashore for inspection.  Geico Marine insured the vessel under a liability-only policy, which did not cover the hull but did permit navigation.  The declarations page included a navigational limit clause:

> CRUISING LIMITS: While afloat, the insured Yacht shall be confined to the waters indicated below:
>
> (There is no coverage outside of this area without the Company's written permission.)
>
> U.S. Atlantic and Gulf Coastal waters and inland waters tributary thereto between Eastport, ME and Brownsville, TX, inclusive and the waters of the Bahamas including the Turks and Caicos, however the boat must be north of Cape Hatteras, NC from June 1 until November 1 annually.

At the insured's request, Geico "issued an endorsement and updated declarations page adding the [Port Risk Ashore] restriction," which "provides no coverage for navigation[.]" *Id.* at 1138.  The insured changed course, requesting that the restriction be removed so he could sail the vessel to Fort Lauderdale.

"On May 27, 2016, *Geico sent Shackleford* an email confirming that it had removed the Port Risk Ashore restriction. ***Attached to the email was an endorsement removing the restriction and an updated declarations page***." *Id.* at 1138 (emphasis added). "On May 28, one day *after* Geico removed the Port Risk Ashore restriction and reinstated the navigational limit, Shackleford set sail" for Fort Lauderdale. *Id.* at 1139 (emphasis added). Shackleford anchored the vessel in Fort Lauderdale where it suffered damage by a storm in June.

Geico denied Shackleford's claim and filed a declaratory-judgment action seeking, *inter alia*, "a declaration that coverage was barred by the policy's navigational limit, which required the vessel to be north of Cape Hatteras, North Carolina, during hurricane season." *Id.* A bench trial was held; the district court ruled against Geico. "As to the navigational limit, it ruled that the policy did not contain a navigational limit at the time of the loss and that, if it did, Geico implicitly waived the limit when it agreed that Shackleford could sail the vessel to Fort Lauderdale in late May." *Id.* Geico appealed.

This Court reversed. The Court first addressed whether the policy contained a navigational limits warranty. The Court parsed

34

the policy language, including the issued updated declarations page before it, to find the cruising limits constituted navigational limits. "In the maritime context, the term 'navigation' means '[t]he act of sailing vessels on water.'" *Id.* at 1140. So Shackleford's ambiguity argument failed.

The Court then addressed whether Geico had implicitly waived compliance with the navigational limits warranty. *Id.* at 1141. On that front, the Court applied Florida law because "[n]o established rule of maritime law governs the waiver of a navigational limit[.]" *Id.* The Court held that Geico did not implicitly waive the cruising limits warranty because (1) Shackleford could have complied with it by promptly taking the vessel out of the water upon arriving in Fort Lauderdale, and (2) nothing demonstrated that Geico "voluntarily and intentionally relinquished its right to enforce the navigational limit." *Id.* at 1142.

The Court finally addressed whether Shackleford's breach of the navigational limits warranty barred coverage. "[F]ederal maritime law requires 'strict' or absolute enforcement of express navigational warranties." *Id.* (citing *Cooke's Seafood*). And the default rule of admiralty law requiring absolute enforcement of express navigational

35

warranties displaces contrary state law. *Id.* at 1142–43. Shackleford's vessel was outside the covered navigational area when the loss occurred. The Court therefore found that no coverage existed, holding that a "breach of an express navigational warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." *Id.* at 1144 (citing *Cooke's Seafood*).

## II.  EMV'S BREACH OF THE NAVIGATING LIMITS WARRANTY IS DISPOSITIVE AND NO CONFLICTING RECORD EVIDENCE EXISTS.

The Vessel sustained damage during its voyage to and in the Dominican Republic in December. The clearly defined navigational restrictions did not encompass the Caribbean or Dominican Republic routes. EMV did not receive any endorsement, rider, signed amendment, or communication from Underwriters authorizing navigation in the Caribbean. The Navigating limits clause is straightforward, representing a guarantee of where the insured Vessel should be during the Policy period. *Robinson*, 73 F.2d at 4. EMV's breach of the Navigating limits is decisive, resulting in the nullification or suspension of coverage for the Incident.

## A. The District Court Rewrote the Navigating Limits

A "clear and unambiguous" insurance policy must be given its "plain and ordinary meaning." *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010). "A court cannot, under the guise of interpretation, rewrite the parties' contract to impose additional terms." *Himmelberger v. 40-50 Brighton First Road Apts. Corp.*, 943 N.Y.S.2d 118, 120 (N.Y. App. Div. 2012). Courts should construe contracts in such a way to avoid absurd or unreasonable results. *Natixis Real Estate v. Natixis Real Estate Holdings,* 50 N.Y.S.3d 13, 22 (N.Y. App. Div. 2017) ("a contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties").

Here, the unambiguous Navigating limits clause did not permit Caribbean navigating at the time of the grounding incident. The Navigating clause did not permit Caribbean navigating or sailing to the Dominican Republic.[85]  In fact, per the Policy, EMV had a duty to

---

[85] D.E. 10-1 at 3; D.E. 122 at 2, 5–6.

ship the Vessel as cargo between the specified navigational limit locations.[86]  But the district court rewrote the Navigating clause to permit Caribbean navigation without any valid endorsement or rider. In so doing, the district court relied upon unsworn, unauthenticated parol evidence. *See N. Assurance v. Grand View*, 183 U.S. 308, 321 (1902) ("a condition contained in the policy cannot be waived by an agent, unless he has express authority so to do; and then only in the mode prescribed in the policy").  Here, no evidence exists in the record or otherwise showing that Underwriters gave express authority to waive the Navigating clause in the Policy.  The district court also did not consider the fact that no endorsement, rider, or other signed agreement was attached to the Policy or otherwise in the record evidence. *Id.* at 318 ("in a suit on a marine policy of insurance, that a parol agreement that the risk should begin at a place different from that inserted in the policy, cannot be received in evidence"); 1 New Appleman New York Insurance Law § 14.05(6) (2023) ("Endorsements are found on separate pages attached to the policy proper"); *see also Shackleford*, 945 F.3d at 1138–39 (insurer sent

---

[86] D.E. 137-2 at 33:23–34:2.

email directly to insured and "attached" endorsement); *Aetna*, 49 F.2d at 123 ("<u>attached to</u> the policy was a rider" limiting coverage); *Robinson*, 73 F.2d at 4–5 (parol evidence inadmissible to show a waiver or estoppel); *Thomas*, 82 F. at 408–10 (oral agreements contradicting terms of written contract are void; thus, no waiver or estoppel)). Or, whether Underwriters intended to impose a premium for Caribbean navigating.[87]

Moreover, EMV did not act as a prudent insured, opting instead to sail the Vessel to the D.R. without a valid endorsement extending coverage for such voyage. Indeed, for well over a month, EMV had known of this planned voyage but waited until the eleventh hour, during the holiday season, when businesses were closed, to inform its agent of the voyage to the D.R.[88] EMV's unilateral attempt to amend the Navigating limits should not be permitted because, to do so, would contravene well-established contract law and prejudice Underwriters. *See Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 267 (2d Cir. 1995) ("insureds cannot unilaterally make changes (e.g., by leaving a message with the company the night before a trip asking

---

[87] D.E. 10-1 at 9; D.E. 137-1 at 4; D.E. 78-14 at 1, 7:7–14.
[88] D.E. 82-1 at 4, 11:11–12:3.

them to extend the policy)" as endorsement expanding navigational limits "will effect an increase in premium"); *Family Fashions, Inc. v. Sterling Jewelers, Inc.*, 2022 U.S. Dist. LEXIS 162453, at *9 (S.D.N.Y. Sep. 8, 2022) (a party to a contract cannot unilaterally modify contractual terms without consent from counterparty); *Bier Pension Plan Trust v. Schneierson*, 74 N.Y.2d 312, 315 (N.Y. 1989) ("Under general contract rules, an obligation may not be altered without the consent of the party who assumed the obligation."); *Becker v. Faber*, 280 N.Y. 146, 148 (N.Y. 1939); *John v. Cent. Loan Admin. & Reporting*, 2021 U.S. Dist. LEXIS 72411, at *6 (E.D.N.Y. 2021) ("It is a fundamental principle of contract law that silence does not constitute acceptance of a contract" and "unsigned writings" are equally not binding); *Satz v. Mass. Bonding & Ins. Co.*, 243 N.Y. 385, 393 (1926) (insurer had right, in spite of any knowledge or information it may have, to rely on written warranties).

The terms of the Navigating limits are clear and unambiguous. The Policy did not afford coverage for Caribbean navigating. As a result, the district court erred in rewriting the Policy to add terms that are not present and reaching a result contrary to the intentions of the parties.

## B. The Doctrine of Waiver is Inapplicable

EMV cannot raise the doctrine of waiver as a shield. New York law governs this analysis. *Shackleford*, 945 F.3d at 1141 ("No established rule of maritime law governs the waiver of a navigational limit, so we apply [the applicable State] law to determine whether [the insurer] waived its right to enforce that provision").

"To establish waiver under New York law, one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it." *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank*, 707 F.2d 680, 685 (2d Cir. 1983) (citations omitted). "The intention to relinquish a right may be established either as a matter of law or fact." *Id.* An intention to relinquish a right may be established as a matter of law where there are "express declarations by a party or situations where the party's undisputed acts or language are so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary." *Id.* "More commonly, intention is proved through declarations, acts and nonfeasance which permit different inferences to be drawn and do not directly, unmistakably or

unequivocally establish it.  In these instances intent is properly left to the trier of fact." *Id.* (internal quotations and citations omitted).

Underwriters did not waive EMV's failure to strictly comply with the Navigating limits.  First, EMV did not rely on any representation made by Underwriters.  And EMV had always intended to repair the Vessel irrespective of coverage existing under the Policy.  Thus, EMV never changed its reliance on whether or not Underwriters would enforce the violation of the Navigating limits clause. *See Robinson*, 73 F.2d at 4 (no waiver where insured did not rely on written representation regarding coverage).

Second, the record evidence shows that Underwriters continuously reserved "all rights" in a series of advance payments, spanning from June 9, 2017 to June 11, 2019.[89]  Underwriters also raised the issue of EMV's breach of navigational limits in its summary judgment motion and pretrial stipulation.[90] *See Gulfstream Cargo, Ltd. v. Reliance Ins.*, 409 F.2d 974, 983 n.29 (5th Cir. 1969) (noting breach of seaworthiness warranty issue properly preserved under a pretrial stipulation); *Kallberg Indus. v. Auto. Experts, Inc.*, 861 F.

---

[89] D.E. 74-7 at 2–14.
[90] D.E. 74 at 4; D.E. 122 at 2, 5–6.

App'x 321, 323 (11th Cir. 2021) ("Parties are bound by their stipulations and a pretrial stipulation frames the issues for trial," and waiver of "a potential defense [occurs] by failing to ensure that the issue is clearly preserved in the pretrial order").  EMV therefore had sufficient notice of this defense.

EMV cannot point to any competent evidence showing Underwriters knew of and intended to relinquish EMV's failure to strictly comply with the Navigating limits.  Or, whether EMV had to pay a premium for the purported expansion and, if so, how much in premium.  This is because EMV never sought to depose Underwriters' corporate representative despite coordinating and taking depositions several months after filing summary judgment motions and circulating proposed pretrial stipulations.[91]  And EMV cannot rely on mere silence or inaction by Underwriters to support a waiver (or estoppel) argument. *Robinson*, 73 F.2d at 4 (no waiver of promissory warranty from "mere silence or inaction after the giving of the alleged notice that the boat was to be moved").[92]  EMV also long knew of the

---

[91] D.E. 137-3 at 2; D.E. 137-3 at 40; D.E. 137-3 at 184; D.E. 122 at 1 n.1.

[92] *See also Yu v. Albany Ins.*, 281 F.3d 803, 811 (9th Cir. 2002) (no estoppel where insurer's silence on intent to enforce captain warranty

Navigating limits as it had in possession the agreed-to Policy.[93]  As a result, mere speculation and inferences is all that EMV can offer to support a waiver argument.  This is insufficient for a favorable summary judgment ruling because the facts allow for multiple interpretations and inferences, creating additional questions about the knowing and intentional surrender of a key dispositive defense. *See Clear Spring Prop. & Cas. Co. v. Big Toys LLC*, No. 22-cv-21926, 2023 U.S. Dist. LEXIS 124902, at *6 (S.D. Fla. July 19, 2023) (citing *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990)).  Thus, Underwriters did not waive EMV's breach of the navigational limits.

### C. The Doctrine of Equitable Estoppel is also Inapplicable

EMV also cannot raise estoppel as a shield.  "Because this case arises within the court's federal admiralty jurisdiction, federal law principles of equitable estoppel govern." *Pagane Mar., Ltd. v. Glingrow*

---

violation under Hawaii law); *Coleman Furniture*, 67 F.2d at 348 (no waiver where insured not rely on representation); *Kentucky Vermillion*, 146 F. 695 (9th Cir. 1906) (parol evidence inadmissible to show a waiver or estoppel); *Thomas*, 82 F. 406 (7th Cir. 1897) (oral agreements contradicting terms of written contract are void; thus, no waiver or estoppel).
[93] D.E. 137-1 at 2.

*Holding, Ltd.*, 2008 U.S. Dist. LEXIS 7016, at *13–14 (S.D.N.Y. Jan. 30, 2008) (citing *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001)).   Under federal law, a party may be estopped from pursuing a claim or defense where: (1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; and (2) the other party reasonably relies upon it; (3) to its detriment. *Kosakow*, 274 F.3d at 725.  "Whether equitable estoppel applies in a given case is ultimately a question of fact." *Id.*

EMV cannot show that Underwriters made a false statement or concealed a material fact that EMV relied on.  The record does not show any false representation or material fact concealment by Underwriters.  Nor can EMV show actual prejudice, as Underwriters reserved "all rights" for coverage in advance payments.

EMV did not rely on Underwriters' representations, nor did they request an expansion of the Navigating limits.  The Vessel had already departed for the D.R. when EMV discovered that Caribbean navigation was not covered.  EMV always intended to repair the Vessel, regardless of coverage.  As a result, EMV did not and could not alter its reliance on whether or not Underwriters would enforce

45

the Navigating limits violation. Therefore, Underwriters are not estopped from enforcing EMV's breach of the navigational limits warranty. *See, e.g.*, *Rosewood Home Builders, LLC v. Nat'l Fire & Marine Ins.*, 2013 U.S. Dist. LEXIS 45374, at *16 (N.D.N.Y. Mar. 29, 2013) (finding insured failed to show how a delay by insurer to disclaim coverage prejudiced insured).

### D. At a Minimum, a Genuine Dispute of Material Facts Exist Precluding Summary Judgment

Given all these reasons, the Court should at a minimum find that factual issues regarding an amendment or waiver of the Navigating limits clause precluded the entry of summary judgment. No competent record evidence exists on which EMV can support an argument that Underwriters amended or waived the Navigating limitations under the Policy. *See Jonas*, 75 F.3d 627 (reversing summary judgment because genuine issues of material facts concerning the alleged breach of the trading warranty existed).

### III. NEW YORK LAW INTERPRETS INSURANCE CONTRACTS ACCORDING TO THEIR PLAIN AND ORDINARY MEANING.

A "clear and unambiguous" insurance policy must be given its "plain and ordinary meaning." *Dalton*, 557 F.3d at 90; *Duane Reade*, 600 F.3d at 201. "A court cannot, under the guise of interpretation,

rewrite the parties' contract to impose additional terms." *Himmelberger*, 943 N.Y.S.2d at 120. Courts should construe contracts in such a way to avoid absurd or unreasonable results. *Natixis*, 50 N.Y.S.3d at 22. Where an insured and insurer cannot agree upon a price for repair costs authorized by the insured, "the insured bears the burden of establishing the reasonable cost of the repairs necessary to bring the vehicle to its condition prior to the loss." *Rizzo v. Merchs. Mut. Ins.*, 727 N.Y.S.2d 250, 252 (2d Dept. 2001).

The Policy requires Underwriters to indemnify EMV only the "reasonable" cost of repair, no more. This duty is derived from several sources: the Policy and New York contract law.

First, the Policy references "reasonable" costs and expenses at least six times. Chief among them, and most relevant to this appeal, is the "New for Old" clause, which states: "In the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, the Assurers shall be liable for no more than the cost of

repair or a reasonable value."[94]    By the plain and unambiguous language, "the Assurers shall be liable for *no more than* the cost of repair or a reasonable value."    In short, the phrase "no more than" modifies the remainder of the sentence.

Second, the Policy's unambiguous "New for Old" clause is consistent with New York law. *See, e.g.*, *Lenfest v. Coldwell*, 525 F.2d 717, 725 (2d Cir. 1975) ("Here the claimed expenses were in large part actually incurred by the owners and the determination of which of these expenses, if reasonable, should be allowed is a question of law. To determine the legal questions, however, we need more detailed findings on what these costs were for, and particularly, how they relate to the repair of the vessel"); *Jeffcott v. Aetna Ins.*, 129 F.2d 582, 587–88 (2d Cir. 1942) (analyzing reasonable cost of repairs to yacht).    Indeed, in the context of automobiles, the New York legislature codified this rule. *See* N.Y. Comp. Codes R. & Regs. § 216.7(a)(1) ("Agreed price shall mean the amount agreed to by the insurer and the insured, or their representatives, as the reasonable cost to repair damages to the motor vehicle resulting from the loss,

---

[94] D.E. 10-1 at 27.

without considering any deductible or other deductions"); *see also Rizzo*, 727 N.Y.S.2d at 252 ("This does not mean that an insured is automatically entitled to be reimbursed for the full amount charged by the repair shop authorized by the insured to make the repairs. Where, as here, the parties cannot reach an agreed price, the insured bears the burden of establishing the reasonable cost of the repairs necessary to bring the vehicle to its condition prior to the loss").

Third, Underwriters need only pay "reasonable" cost of repair, no more, based on the general common law duty under New York law requiring parties to a contract to mitigate damages. *See U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440-41 (S.D.N.Y. 2010); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 350(1) (1981) (". . . damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation."). An insured who incurs excessive bills following a loss has failed to mitigate its damages and cannot recover that which could have reasonably been avoided. *See Wechsler v. Hunt Health Sys, Ltd.*, 330 F. Supp. 2d 383, 427 (S.D.N.Y. 2004).

Fourth, the general duty of an insured following a loss "to exercise the care of a prudent uninsured owner to protect insured

49

property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy." *Am. Home Assurance v. Merck & Co.*, 386 F. Supp. 2d 501, 517 (S.D.N.Y. 2005) (quoting *Reliance Ins. Co. v. Escapade*, 280 F.2d 482, 488 (5th Cir. 1960)). This fourth basis is intertwined with the third reason above and is usually framed in the context of a so-called "sue and labor clause." This principle is, in effect, a restatement of the general duty to mitigate damages: following a loss, an insured has a duty to act as if he himself would be responsible for the ensuing payments, rather than the insurance company. Failure to act with such regard for the insurer's interest forfeits the insured's ability to recover that which he spent unnecessarily. *Cf. Wechsler*, 330 F. Supp. 2d at 427 ("Under New York law, an injured party cannot recover damages for a loss that it could have avoided by reasonable efforts").

Fifth, all of these rules are consistent with the general rule of federal admiralty law that "[t]he measure of indemnity for a particular average ship is the reasonable cost of repairs," and that "to determine the reasonable cost of repairs, each particular case must be evaluated in all of its circumstances." *See generally* BUGLASS, LESLIE J., *Marine Insurance and General Average in The United States* 155-

61 (3d ed. 1991).  Thus, while "reasonable cost of repairs" has been interpreted differently by courts in the United States, "a shipowner is entitled to repair [its] vessel in that manner which a prudent [person] would employ if uninsured." *Id.* at 158.

Lastly, under New York law, a covenant of good faith and fair dealing is implied in every contract, including insurance contracts. *See, e.g.*, *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995).  This covenant, which goes both ways, is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. v. Canadian Imperial Bank*, 697 N.Y.S.2d 128, 130 (2d Dept. 1999).  And, under New York law, where a contract grants discretion to a party, the covenant includes an implied promise "not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995).  To the extent that the Policy and applicable law give EMV the discretion to begin making repairs to the Vessel, such discretion is still subject to limits. EMV cannot act "arbitrarily or irrationally" in effecting repairs lending itself to but one conclusion: it must act reasonably. *See id.*

51

To that end, the Policy provides clear instructions to an insured whose vessel is damaged: "The Assured shall co-operate with the Assurers and shall not assume any obligation, admit any liability or incur any expense for which the Assurers may be liable, without the written approval of the Assurers," excepting so-called "sue and labor" costs that are not relevant to this action.[95]  The Policy itself stipulates that EMV cannot spend indefinite sums of money with the expectation that Underwriters would pay those sums without evaluating the reasonableness of the amounts spent and consent to pay those amounts.  Again, it must act reasonably.

In short, a multitude of sources from various points of view all point to the same result: Underwriters are only required to indemnify their insured, if at all, for the reasonable cost of repairs, even if that amount is ultimately lower than what EMV profligately spent.

## IV. EMV's "Actual Costs" Damages Award Includes Non-Incident-Related Expenses.

EMV did not prove a breach of the Policy by Underwriters and failed to establish damages with reasonable certainty.  The record lacks support for EMV's damages claim.  Underwriters had no

---

[95] D.E. 10-1 ("Legal Representation and Co-Operation Clause").

opportunity to challenge the amount sought by EMV, and the district court prematurely entered Final Judgment in EMV's favor as a result.

Under New York law, a movant may seek general or consequential damages in a breach of contract case. *Holland Loader Co. v. FLSmidth A/S*, 769 F. App'x 40, 42–43 (2d Cir. 2019). General damages are those to compensate for the value of the very performance promised. *Id.* Consequential damages are those to compensate for additional losses that are incurred as a result of the breach. *Id.* In either damages scenario, the movant must establish by a preponderance of the record evidence and with reasonable certainty the very existence of its damages and the amount of damages it incurred as a result of the breach. *Id.*

"Proof of damages is an essential element of a claim for breach of contract under New York law." *Process Am., Inc. v. Cynergy Holdings*, 839 F.3d 125, 141 (2d Cir. 2016). Failure to provide proof of damages "is fatal to a cause of action for breach of contract." *Kelly v. Bensen*, 151 A.D.3d 1312, 1314 (3d Dept. 2017). A non-breaching party is entitled, as a matter of law, to recover actual damages to the extent that they are causally linked to the breach and can be proven with reasonable certainty. *See Schonfeld v. Hilliard*, 218 F.3d 164,

53

182 (2d Cir. 2000); *Acorn Hous. v. Sirius Am. Ins.*, 988 N.Y.S.2d 521 (Sup. Ct., Kings 2014) (actual damages must be proved, including proof that event at issue was within scope of insurance). Damages "may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co. v. Erie Cty.*, 67 N.Y.2d 257 (1986); *Tractebel Energy v. AEP Power Marketing*, 487 F.3d 89, 111 (2d Cir. 2007). Where damages are speculative or uncertain, the Court must deny summary judgment as to damages and hold an evidentiary hearing (inquest) on that issue. *Acorn*, 988 N.Y.S.2d at 521 ("the amount of actual damages must also be proved" and "[w]here a party has damages but the total cannot be ascertained, it is an appropriate course of action to deny the moving party summary judgment as to damages and conduct an inquest."); *B & B Iron*, 2022 U.S. Dist. LEXIS 161481, at *6.

The non-breaching party must first prove its actual damages are causally linked to the breach "by a preponderance of the evidence." *Cynergy*, 839 F.3d at 141; *Holland*, 769 F. App'x at 43 ("Because the district court held that [plaintiff] failed to prove the fact of damage with reasonable certainty, it never reached the question of

the amount of damages"). Thereafter, the non-breaching party must "show a stable foundation for a reasonable estimate of the damages incurred as a result of the breach." *Cynergy*, 839 F.3d at 141; *Acorn*, 988 N.Y.S.2d 521 ("Even in those cases where the breach is causally linked to the promisee's claim for damage, the amount of damages must also be proved"). Only after meeting that burden does "the burden of any uncertainty as to the amount of damages" shift to the purported breaching party. *Cynergy*, 839 F.3d at 141; *Acorn*, 988 N.Y.S.2d at 521.

Authenticated documentation, affidavits, and credible testimony are typically required to be in the record to prove with reasonable certainty a stable foundation for damages. *Id*. at *12; *see also KT Grp. Ltd. v. NCR Corp.*, 412 F. Supp. 3d 305, 326 (S.D.N.Y. 2019); *Family Fashions*, 2022 U.S. Dist. LEXIS 162453, at *12 n.3, *18–19 (failure to specifically account for inevitable deterioration of good over five years resulted in the Southern District of New York finding plaintiff had "fail[ed] to establish a stable foundation for a reasonable estimate of damages incurred"); *Adolph Coors v. Movement Against Racism & The Klan*, 777 F.2d 1538 (11th Cir. 1985). The Omnibus Order [D.E. 124] recognizes that EMV must

55

provide credible evidence for any specific amount claimed as actual damages in this case.

Here, EMV sought $9,764,746.01 in damages—the alleged "actual costs" to repair the Vessel—minus $3,259,432.20—the advanced indemnity payments made by Underwriters.[96]  But EMV has not proved by a preponderance of the record evidence and with reasonable certainty the very foundation of its alleged actual damages.  The Final Judgment is inherently flawed for four reasons.

**First**, EMV did not provide reliable evidence to prove its damages.  The record lacks necessary supporting documents like invoices and detailed affidavits.  EMV was never required to present evidence to prove up its alleged damages by the district court.  EMV's only attempt to demonstrate damages was through a proposed final judgment, which lacked supporting affidavits or sufficient evidence and which EMV's counsel penned without the district court allowing Underwriters to challenge the same or provide any documentation contrary to the amount sought.[97]  In fact, EMV's Corporate Representative admitted in deposition that "$1.4 [million] is not

---

[96] D.E. 125 at 10–11.
[97] D.E. 131.

related" to the Incident and, thus, EMV would only "be asking for $8.5 million," plus interest and fees.[98] *See also Acorn*, 988 N.Y.S.2d at 521 ("Actual damages must be causally linked to the breach <u>and must be proved</u>").  EMV's Corporate Representative testified that the recoverable amount should be approximately $5.2 million (i.e., $8.5 minus $3.3).[99]  This testimony raises questions about the basis for EMV's claimed "actual" damages.  The district court overlooked this sworn testimony when awarding EMV $9,764,746.01 in damages.[100]

**Secondly**, regarding the amount sought for recovery, along with having to provide proof of the damages, EMV's repair costs should, at a minimum, be adjusted to account for nearly $1.4 million to $1,738,307 in non-incident-related expenses.[101]  These expenses include: (1) $845,274 for main engine repairs by The Diesel Workshop;[102] (2) $73,030 for generator repairs due to corrosion damage;[103] (3) $15,606 for annual hull and machinery inspections;[104]

---

[98] D.E. 137-2 at 66:24–88:18.
[99] D.E. 137-2 at 85:17–20.
[100] D.E. 131 at 2.
[101] D.E. 80-1 at 163–67.
[102] D.E. 129 at 11.
[103] D.E. 129 at 11–12.
[104] D.E. 129 at 11–12.

(4) \$10,000 for hiring a temporary captain;[105] and (5) \$4,593 for preserving water makers by Beard Marine.[106]  Mr. Roy Shorter, EMV's surveyor and expert witness, testified in deposition that the \$845,274 costs associated with rebuilding the engines were not related to the Incident but resulted from EMV's failure to properly winterize the engines' parts during the repairs.[107]  All these costs are unrelated to the Incident, and therefore, EMV's "actual" damages should be reduced by at least \$1.4 million to \$1,738,307.  The district court overlooked this evidence and sworn testimony when awarding EMV the full \$9,764,746.01.[108] *See Acorn*, 988 N.Y.S.2d at 521; *FranPearl Equities Corp. v. 124 W. 23rd St.*, 164 A.D.3d 1190, 1190 (1st Dept. 2018) (finding expert report on damages "merely speculative, possible or imaginary, rather than reasonably certain and directly traceable to the breach").  Underwriters were not given the platform of a trial on damages or an evidentiary hearing on the damages issue in this case and that is manifestly unjust.

---

[105] D.E. 129 at 11–12.
[106] D.E. 129 at 11–12.
[107] D.E. 137-3 at 243:3–246:13.
[108] D.E. 131 at 2.

**Thirdly**, according to the Final Judgment penned by EMV, they claim $9,764,746.01 in "actual costs," as supported by EMV's treasurer Mr. Israel Navarro's deposition testimony.[109]    But Mr. Navarro's testimony is unreliable.  Mr. Navarro had no recollection of the documents in question and could not confirm the precise payments totaling $9,764,746.01.[110]   He also mentioned that he never reviewed or had access to the invoices in question.[111] Therefore, Mr. Navarro's deposition is speculative regarding EMV's "actual costs" claim.

**Lastly**, EMV's unilateral Pretrial Stipulation, incorporated into the Final Judgment, cannot validate its "actual costs" damages claim as it was not voluntarily agreed upon by Underwriters.[112] Underwriters disputed the damages amount and their obligation to pay the full $9.5 million under the Policy.[113]   Underwriters never acknowledged that all of EMV's "actual costs" were directly linked to

---

[109] D.E. 131 at 2.
[110] D.E. 103-1 at 5, 16:1–17:21; D.E. 103-1 at 7, 23:5–24:17.
[111] D.E. 103-1 at 4, 10:4–8; D.E. 103-1 at 5, 15:21–25; D.E. 103-1 at 6, 18:18–20.
[112] *Compare* D.E. 123 *with* D.E. 131.
[113] D.E. 75 at 8–15; D.E. 122 at 5.

the Incident.[114]    Consequently, EMV's Pretrial Stipulation cannot bind Underwriters to support the claimed damages. *Kallberg*, 861 F. App'x at 323 (citing *G.I.C. Corp. v. United States*, 121 F.3d 1447, 1450 (11th Cir. 1997)).  This leaves EMV unable to prove damages with sufficient competent evidence, warranting a trial on the merits. *See Peak v. Northway Travel Trailers*, 27 A.D.3d 927, 929 (3d Dept. 2006).

## CONCLUSION

The Court should reverse the district court's summary judgment in favor of EMV due to the discussed errors and instruct the district court to enter judgment for Underwriters.  Alternatively, the Court should reverse and order a bench trial, citing genuine issues of material fact about the Policy's coverage.  Finally, the Court should find that the Final Judgment is unsupported by the evidence and reverse it.

Dated: October 13, 2023.                Respectfully submitted,

**BROWN SIMS**
2801 Southwest 149th Ave.
Suite 120
Miramar, Florida 33027
Tel.: (305) 274-5507
Fax: (305) 274-5517
*Counsel for Appellant*

---

[114] D.E. 122 at 5.

By: _/s/ Cody L. Frank_
Marlin K. Green
Florida Bar No. 419532
mgreen@brownsims.com
Cody L. Frank
Florida Bar No. 124100
cfrank@brownsims.com

61

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this brief contains 11,614 words. In certifying the foregoing, I have relied upon the word count of the word processing system used to prepare the brief as authorized by FRAP 32(g).

This brief also complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in Bookman Old Style 14-point font, a proportionally spaced typeface, using Microsoft Word.

By: */s/ Cody L. Frank*
CODY L. FRANK
Florida Bar No. 124100
*Counsel for Appellant*

62

## CERTIFICATE OF SERVICE

I hereby certify that, on October 13, 2023, this document was filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will serve a copy of this document on all counsel of record via transmission of a Notice of Electronic Filing generated by the CM/ECF system.

By: */s/ Cody L. Frank*
CODY L. FRANK
Florida Bar No. 124100
*Counsel for Appellant*

63